**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHIE FOSTER LEVINE,**

                      **Plaintiff,**

          **v.**

**NEW YORK STATE POLICE**
**et al.,**

                    **Defendants.**

**1:21-cv-503**
**(GLS/DJS)**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Richie Foster Levine
Pro se
PO Box 410
Hoosick Falls, NY 12090

**FOR THE DEFENDANTS:**
*New York State Police,*
*New York State Police Troop G,*
*Keith M. Corlett, Major Robert*
*Patenaude, Michael Altieri, Todd*
*Potts & Daniel Beaudoin*
HON. LETITIA JAMES                  GREGORY J. RODRIGUEZ,
New York Attorney General           Assistant Attorney General
The Capitol
Albany, NY 12224

*County of Albany, Albany County*
*District Attorney's Office, P. David*
*Soares & Linda Griggs*
Liguori & Houston, PLLC            JOHN W. LIGUORI, ESQ.
69 State Street - Suite 1200

Albany, NY 12207

*Okeefe Electric, LLC & Robert
O'Keefe*
E. Stewart Jones Hacker Murphy, LLP     JOHN F. HARWICK, ESQ.
200 Harborside Drive - Suite 300
Schenectady, NY 12305

28 Second Street - Suite 203          JULIE A. NOCIOLO, ESQ.
Troy, NY 12180

*Regan Lawncare and Landscape,
Inc. & Matthew Regan*
Gomez Law, LLC                        RAFAEL O. GOMEZ, ESQ.
2746 Delaware Avenue
The Eberhardt Mansion
Buffalo, NY 14217

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff pro se Richie Foster Levine commenced this action against

defendants New York State Police, New York State Police Troop G, Keith

M. Corlett, Major Robert Patenaude, Michael Altieri, Todd Potts, Daniel

Beaudoin (hereinafter "NYSP Defendants"), County of Albany, Albany

County District Attorney's Office, P. David Soares, Linda Griggs

(hereinafter "County Defendants"), Okeefe Electric, LLC, Robert O'Keefe,

Regan Lawncare and Landscape, Inc., and Matthew Regan (hereinafter

"Private Actor Defendants") alleging a host of violations pursuant to 42

U.S.C. §§ 1983 and 1985 and state law.  (Compl., Dkt. No. 1.)  Pending is

Private Actor Defendants' motions to dismiss pursuant to Fed. R. Civ.

P. 12(b)(1) and 12(b)(6), (Dkt. Nos. 39, 48), NYSP Defendants' motion for

judgment on the pleadings, (Dkt. No. 60), County Defendant's motion for

judgment on the pleadings, (Dkt. No. 61), and Levine's motion to amend,

(Dkt. No. 56).  For the reasons that follow, Private Actor Defendants'

motions to dismiss are granted, NYSP Defendants' motion for judgment on

the pleadings is granted in part and denied in part, County Defendant's

motion for judgment on the pleadings is granted, and Levine's motion to

amend is denied as moot.

## II. __Background__[1]

Levine describes himself as "a person with prior [criminal] convictions

who utilizes [various] New York State . . . Law[s] . . . against employers

who advertise conviction bars in print . . . and directly discriminate against

him in violation of public policy."  (Compl. ¶ 42.)  On December 1, 2019,

---

[1] The facts are drawn from Levine's complaint, (Dkt. No. 1), and
presented in the light most favorable to him.

Levine mailed a letter to Regan Lawncare regarding a job posting on "indeed.com," which required applicants to have a "clean criminal record." (*Id.* ¶ 45.)  The letter noted that Regan Lawncare was in violation of N.Y. Corrections Law art. 23-A, requested "a good faith settlement," and stated that Levine "was going to commence civil litigation if necessary . . . to enforce his . . . rights."  (*Id.*)  Sometime thereafter Levine mailed a similar letter to Okeefe Electric in response to another "indeed.com" job posting "that contained a prohibition of 'no felony'" convictions for applicants.  (*Id.* ¶ 46.)

On January 16, 2020, O'Keefe sent a "threatening" letter to Levine that accused Levine of "engag[ing] in a scheme to defraud" and extort Okeefe Electric.  (*Id.* ¶ 47.)  O'Keefe and Regan then both contacted Altieri, a New York State Police Investigator, to "conspire" in order "to stop . . . Levine from "extorting," scheming," and "defrauding" their businesses. (*Id.* ¶¶ 48-49.)  On January 24, 2020, O'Keefe gave a supporting deposition to Altieri and New York State Police Commander Patenaude stating that Levine had "made false claims against" Okeefe Electric and that he wanted Levine to be arrested.  (*Id.* ¶ 52.)  Altieri and Major Patenaude applied for a search warrant regarding the job postings in order

4

"to prove that [Levine] posted the [employment] advertisements in question and had attempted to scheme and extort Okeefe Electric . . . and Regan Lawncare."  (*Id.* ¶ 54.)

On February 7, 2020, Altieri contacted Albany County Assistant District Attorney Griggs, who "counseled [him] about the propriety and legality of the investigation of" Levine, instructed him to continue the investigation, and requested that he inform her of the results of the search warrant.  (*Id.* ¶ 59.)  On February 24, 2020, Altieri and Patenaude obtained the information requested from Indeed.com, which showed "no job postings . . . from Okeefe Electric . . . or any application to Okeefe Electric by . . . Levine," nor did the information show any job postings by Regan Lawncare or applications by Levine thereto.  (*Id.* ¶¶  60, 62-63.)  However, both job postings were "still . . .online and were plainly visible if [Altieri and Patenaude] had just simply bothered to look for them."  (*Id.* ¶¶ 62-63.)  That same day Altieri and Patenaude conferred again with Griggs, who "counseled [them] about the propriety and legality of arresting" Levine.  (*Id.* ¶ 61.)

On February 29, 2020, Levine was arrested by Trooper Potts, who, when arresting Levine, handcuffed him "extremely tight, so much so that

5

[his] circulation was restricted." (*Id.* ¶¶ 66-68.)  Levine was then brought to "the Clifton Park facility" and was picked up by Altieri, who drove him to the New York State Police Troop G headquarters in Albany for processing. (*Id.* ¶¶ 69-70.)  While driving there, Altieri questioned Levine "about the arrest" after Levine indicated that he wished to invoked his right against self-incrimination.  (*Id.* ¶ 72.)  At the Troop G headquarters, Levine was charged with two misdemeanors, fingerprinted, questioned, and issued a Desk Appearance Ticket (DAT).  (*Id.* ¶¶ 73-75.)  After a period of delays due to the COVID-19 pandemic and some initial proceedings in the Town of Guilderland Criminal Court, the charges against Levine were "dismissed by the [Albany County] District Attorney's [O]ffice . . . on consent."  (*Id.* ¶¶ 77-78, 80, 83-87.)

### III.  <u>Standards of Review</u>

### A.  <u>Motion to Amend</u>

Rule 15 of the Federal Rules of Civil Procedure allows a party not otherwise permitted to amend its pleading to do so with leave of the court. *See* Fed. R. Civ. P. 15(a)(2).  The rule mandates that "[t]he court should freely give leave when justice so requires."  *Id.*  Barring "futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by

amendments previously allowed, or undue prejudice to the non-moving party," leave should generally be granted.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citation omitted).

**B.   Motions to Dismiss**

1.   *Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of the complaint where the court lacks subject matter jurisdiction.  "The burden of proving jurisdiction is on the party asserting it."  *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996) (internal quotation marks and citation omitted).  In reviewing a Rule 12(b)(1) motion, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits."  *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  Regarding claims brought pursuant 42 U.S.C. § 1983, whether a defendant acts "under color of state law" is a jurisdictional determination.  *See Velez v. Long Island Bus. Inst.*, 16-cv-5825, 2017 WL 4350422, at *2 (E.D.N.Y. May 3, 2017).

7

2.   *Rule 12(b)(6)*

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled

and will not be repeated here.  For a full discussion of the governing

standard, the court refers the parties to its prior decision in *Ellis v. Cohen &*

*Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on*

*other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191

(2d Cir. 2015).

3.   *Rule 12(c)*

"The standard for addressing a Rule 12(c) motion for judgment on

the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for

failure to state a claim."  *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233,

234 (2d Cir. 2012) (internal quotation marks and citation omitted); *see Ellis*,

701 F. Supp. 2d at 218.

## IV.  Discussion

## A.   Levine's Causes of Action

While keeping in mind the court's duty to "liberally construe pleadings

. . . submitted by *pro se* litigants, reading such submissions to raise the

strongest [claim]s they suggest," *Bertin v. United States*, 478 F.3d 489,

491 (2d Cir. 2007) (internal quotation marks and citations omitted), many of

Levine's claims are duplicative or cannot be supported by law.  The court construes Levine's first, twelfth, and seventeenth enumerated causes of action, against Altieri, Patenaude, Potts, Beaudoin, Corlett, Griggs, Soares, and Private Actor Defendants, as one cause of action for First Amendment retaliation under 42 U.S.C. § 1983, stemming from Levine's claim that he was "malicious[ly] prosecut[ed] and false[ly] arrest[ed]," as a result of the letters he sent to Okeefe Electric and Regan Lawncare.[2] (Compl. ¶¶ 153-59, 241-45, 269-76.)  The court construes Levine's second, fifth, ninth, tenth, and fifteenth enumerated causes of action, against Altieri, Patenaude, Potts, Beaudoin, Corlett, Griggs, Soares, and Private Actor Defendants, as one cause of action for § 1983 false arrest in violation of his Fourth Amendment rights, stemming from his arrest on February 29, 2020.[3] (Compl. ¶¶ 160-66, 181-87, 214-24, 257-

---

[2]  Levine's first, twelfth, and seventeenth enumerated causes of action are labeled: "42 U.S.C. § 1983 violating the First Amendment Right of [Levine]," "First Amendment Retaliation," and "New York State Constitution Article 1, § 8," respectively, and all stem from the same alleged conduct.  (Compl. ¶¶ 153-59, 241-45, 269-76); *see Bianchi v. Green*, No. 1:18-cv-619, 2019 WL 1440095, at *5 (N.D.N.Y. Mar. 29, 2019) (finding that a "retaliation claim pursuant to Article I, Section 8 of the New York State Constitution is duplicative of [a] § 1983 First Amendment retaliation claim").

[3]  Levine's second, fifth, ninth, tenth, and fifteenth enumerated causes of action are labeled: "42 U.S.C. § 1983 violating the Fourth

62.)  The court construes Levine's sixth, thirteenth, and fourteenth

enumerated causes of action, against Altieri, Patenaude, Potts, Beaudoin,

Corlett, Griggs, Soares, and Private Actor Defendants, as one cause of

action for § 1983 malicious prosecution, stemming from the criminal

---

Amendment Rights of [Levine]," "False Arrest under 42 U.S.C. § 1983,"
"Intentional Infliction of Emotional Distress under 42 U.S.C. § 1983,"
"False Imprisonment under 42 U.S.C. § 1983," and "Negligence under 42
§ U.S.C. 1983," respectively, and all stem from the same alleged
conduct—his arrest on Feb 29, 2020.  (Compl. ¶¶ 160-66, 181-87, 214-24,
257-62); *see McCarthy v. Roosevelt Union Free Sch. Dist.*, No.
15-CV-01468, 2017 WL 4155334, at *4 (E.D.N.Y. Sept. 19, 2017) (finding
an intentional infliction of emotional distress claim duplicative of § 1983
false arrest claim where they stemmed from the same conduct); *see also
Hillary v. Village of Potsdam*, No. 7:12-cv-1669, 2015 WL 902930, at *4
n.5 (N.D.N.Y. Mar. 3, 2015) (construing separate § 1983 false arrest and
false imprisonment causes of action as one claim where they were
premised on the same conduct); *Maldonado v. City of New York*, No. 11
Civ. 3514, 2014 WL 787814, at *12 (S.D.N.Y. Feb. 26, 2014) ("It is well
settled that New York courts do not recognize claims for . . . negligence
arising out of an arrest or prosecution, . . . [t]hus, a plaintiff seeking
damages for an injury resulting from a wrongful arrest and detention may
not recover under broad general principles of negligence . . . but must
proceed by way of the traditional remedies of false arrest and
imprisonment." (internal quotation marks, alterations, and citations
omitted)).  Additionally, to the extent the complaint alleges false arrest
under common law, (*see* Compl. ¶ 220), or that Levine's arrest violated his
Fifth Amendment rights, (*see* Compl. ¶ 170), these claims are also
subsumed.  *See Hillary*, 2015 WL 902930, at *4 n.5; *see* also *Santos v.
New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("A § 1983
claim for false arrest arises under the Fourth Amendment.").

proceeding commenced against him in Guilderland Town Court.[4]  (Compl.

¶¶ 188-98, 246-256.)  To the extent Levine attempts to make out a claim

for *Monell* liability, against Albany County and the Albany County District

Attorney's Office,[5] under any of his various § 1983 enumerated causes of

action, (*see, e.g.*, Compl. ¶ 157), these allegations are subsumed by his

enumerated *Monell* cause of action, (Compl. ¶¶ 205-13.)  Additionally, to

the extent Levine alleges a cause of action under the "Cat's Paw Theory

––––––––––––––––––––

[4]  Levine's sixth, thirteenth, and fourteenth enumerated causes of action are labeled: "Malicious Prosecution under 42 U.S.C. § 1983," "Abuse [o]f Process under 42 U.S.C. § 1983," and "Intentional or Malicious Harm [t]o Another (Prima Facie Tort) under 42 U.S.C. § 1983," respectively, and all stem from the same alleged conduct.  (Compl. ¶¶ 188-98, 246-256); *see Lagorio v. Hilton Cent. Sch. Dist.*, No. 17-CV-6460, 2018 WL 4491453, at *2 (W.D.N.Y. Sept. 19, 2018) ("When a plaintiff alleges claims for malicious  prosecution and abuse of process under § 1983 . . . all premised on the same facts, the [abuse of process] claims . . . must be dismissed as duplicative." (citation omitted)); *see also Gallagher v. N.Y.C. Health & Hosps. Corp.*, No. 16 Civ. 4389, 2017 WL 4326042, at *6 (S.D.N.Y. Sept. 20, 2017) (dismissing prima facie tort claim where plaintiff reasserted "the same allegations of misconduct and general harm that form the basis of their other causes of action").

[5]  Although the complaint appears to allege this cause of action against Soares in his official capacity, (Compl. ¶ 212), such a claim would be duplicative.  *See Conte v. County of Nassau*, No. 06-CV-4746, 2009 WL 393642, at *1 (E.D.N.Y. Feb. 13, 2009).  Additionally, while the complaint also appears to allege *Monell* liability against the New York State Police, Troop G, and Corlett in his official capacity as Commissioner, (Compl. ¶ 211), these defendants are state actors, and, thus, not amenable to *Monell* liability.  *See Daly v. Town of Dewitt*, No. 18-cv-845, 2019 WL 4170162, at *3-4 (N.D.N.Y. Sept. 2, 2019).

under 42 U.S.C. § 1983," (Compl. ¶¶ 353-62), such a claim is unavailable

under the law.  *See Levine v. N.Y. State Police*, No. 1:21-cv-1181, 2022

WL 1987845, at *15 (N.D.N.Y. June 6, 2022) (collecting cases).  Finally,

although not specifically alleged by Levine, in accordance with the court's

duty to read Levine's complaint to "raise the strongest [claim]s [it]

suggest[s]," *see Bertin*, 478 F.3d at 49, the court has considered whether

Levine's allegations adequately state a Fourth Amendment claim for

excessive force against Potts, (*see* Compl. ¶ 68 (alleging that Potts

"[hand]cuffed . . . [Levine] extremely tight, so much so that [his] circulation

was restricted")), and finds that, at this early stage, it does.[6]

Accordingly, Levine's complaint is construed as alleging First

Amendment retaliation, (Compl. ¶¶ 153-59, 241-45, 269-76), Fourth

Amendment false arrest, (*id.* ¶¶ 160-66, 181-87, 214-24), Fourteenth

Amendment Equal Protection, (*id.* ¶¶ 174-80), Fourth Amendment

malicious prosecution, (*id.* ¶¶ 188-98, 246-256), Fifth Amendment right

_____

[6] NYSP Defendants' argument that Potts' "allegations are insufficient to state a claim for excessive force . . . as there is no allegation that he suffered any type of injury beyond temporary pain and discomfort," (Dkt. No. 60, Attach. 2 at 12 n.3), even if true, does not defeat his claim. *See Rizk v. City of New York*, 462 F. Supp. 3d 203, 224 (E.D.N.Y. May 22, 2020) ("Fourth Amendment excessive force claims cannot be dismissed solely for failure to establish more than de minimis injury.").

against self-incrimination, (*id.* ¶¶ 167-73), Fourth Amendment failure to intervene, (*id.* ¶¶ 199-204), and Sixth Amendment fabrication of evidence, (*id.* ¶¶ 263-68), all pursuant to 42 U.S.C. § 1983, against defendants Altieri, Patenaude, Potts, Beaudoin, Soares, Griggs, Corlett, and Private Actor Defendants; Fourth Amendment excessive force, pursuant to 42 U.S.C. § 1983, against Potts (*id*. ¶ 68); a conspiracy claim pursuant to § 1985(3), (*id.* ¶¶ 225-40), against defendants Altieri, Patenaude, Potts, Beaudoin, Soares, Griggs, Corlett, and Private Actor Defendants; a *Monell* claim against defendants Albany County and the Albany County District Attorney's Office, (*id.* ¶¶ 205-13); and numerous state law claims against Private Actor Defendants, (*id.* ¶¶ 277-352).

## B.   <u>Private Actor Defendants</u>

Private Actor Defendants argue that the § 1983 claims against them must be dismissed because Private Actor Defendants were not acting under color of state law, that the § 1985(3) claim must be dismissed because Levine has not adequately pleaded conspiracy, and that the court should decline to exercise jurisdiction over the remaining state law claims or that they should be dismissed on the merits.  (Dkt. No. 39, Attach. 1 at 6-12; Dkt. No. 48, Attach. 11 at 3-15.)  Levine counters that Private Actor

13

Defendants were acting under color of state law because they acted together with the state actors, that he has pleaded a conspiracy, and that the court should retain jurisdiction over his state law claims, which he has adequately pleaded.  (Dkt. No. 42 at 5-12; Dkt. No. 52 at 5, 10-15.)  For the reasons that follow, Private Actor Defendants' motions are granted.

42 U.S.C. § 1983 provides remedies for violations of federal statutory and constitutional rights by persons acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  "Private actors . . . generally are not proper defendants to a 42 U.S.C. § 1983 action, because they do not act under color of state law."  *White v. Monarch Pharm., Inc.*, 346 F. App'x 739, 740 (2d Cir. 2009) (internal citation omitted).  However, a private actor may be liable under § 1983 if "there is a sufficiently close nexus between the State and the challenged action of the [private actor] so that the action of the latter may be fairly treated as that of the State itself."  *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).  Such a nexus exists when:

> [T]he state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an

> agency of the State, has been delegated a public function by the state, or is entwined with governmental policies.

*Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (internal quotation marks and citation omitted).

Additionally, in order to demonstrate that a private actor was acting under color of state law by engaging in a conspiracy with the state actors "a complaint 'must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages.'" *Fisk v. Letterman*, 401 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-35 (2d Cir. 2002)).  Conclusory allegations of conspiracy will not meet this standard.  *See Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).

While a plaintiff is not required to allege that the defendants acted under color of state law to make out a claim under 42 U.S.C. § 1985(3), *see Jones v. Crisis Serv. of Erie Cty.*, No. 16-CV-234, 2019 WL 4303441, at *2 (W.D.N.Y. Sept. 11, 2019), the plaintiff must "allege: '1) a conspiracy; 2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under

15

the laws,'" *Oliver v. N.Y. State Police*, No. 1:19-cv-233, 2020 WL 1849484, at *9 (N.D.N.Y. Apr. 13, 2020) (quoting *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015)).  Further, "[v]ague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under . . . § 1985(3)."  *Powell v. City of Jamestown*, No. 1:21-cv-721, 2022 WL 1913581, at *18 (W.D.N.Y. June 3, 2022) (citation omitted).

Here, the complaint does not adequately allege that Private Actor Defendants were acting under color of state law.  The Private Actor Defendants are private citizens and privately owned business entities. (Compl. ¶¶ 18-21.)  While Levine alleges that O'Keefe and Regan contacted, and ultimately, met with Altieri, a State Police Officer, "to conspire" against him, and that O'Keefe gave a supporting deposition to Altieri and Patenaude, another State Police Officer, that he knew were false in order to "have him arrested," (Compl. ¶¶ 12-13, 48-49, 52, 317, 347), these allegations are insufficient to demonstrate that Private Actor Defendants were acting under color of state law.  *See Pacherille v. City of Otsego*, No. 3:13-CV-1282, 2014 WL 11515848, at *5 (N.D.N.Y. Nov. 20, 2014) ("[C]ase law in this Circuit is well-established that the provision of

16

information to a police officer—even if that information is false or results in the officer taking affirmative action—is insufficient to constitute 'joint action' with state actors for the purposes of § 1983." (citations omitted)); *see also Leon v. Murphy*, 988 F.2d 303, 311 (2d. Cir. 1993) ("A [§ 1983] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (citations omitted)).  Additionally, these allegations fail to meet the pleading standard for a § 1985(3) conspiracy claim.  *See Powell*, 2022 WL 1913581, at *18.  Accordingly, Levine's §§ 1983 and 1985(3) claims against Private Actor Defendants are dismissed, and the court declines to exercise jurisdiction over the remaining state law claims against these defendants.  *See Clark v. Dominique*, 798 F. Supp. 2d 390, 408 (N.D.N.Y. 2011) ("Although a federal court has discretion to retain jurisdiction over state law claims after the dismissal of the federal claims that created original jurisdiction, 'where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.'" (quoting *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006))).

; *see Mhina v. Doren*, No. 5:15-cv-327, 2016 WL 5374114, *3

17

(N.D.N.Y. Sept. 26, 2016) ("[W]here federal claims against [some]

defendants remain, courts have declined to exercise supplemental

jurisdiction over state law claims against defendants for whom all federal

claims have been dismissed." (citations omitted)).

## C.   **County Defendants**

1.   *Claims Against Griggs and Soares*

County Defendants seek dismissal of Levine's claims against Griggs

on the grounds that she is entitled to absolute prosecutorial immunity.[7]

(Dkt. No. 61, Attach. 1 at 2-5.)  Levine counters that Griggs is not entitled

to immunity because her actions were taken "in an investigatory or legal

advice capacity."  (Dkt. No. 71 at 5.)

"Prosecutorial immunity from . . . liability is broadly defined, covering

virtually all acts, regardless of motivation, associated with the prosecutor's

function as an advocate."  *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir.

2012) (internal quotation marks and citation omitted).  "[A] prosecutor's

functions preliminary to the initiation of proceedings include whether to

present a case to a grand jury, whether to file an information, whether and

---

[7]  Because all claims against County Defendants are dismissed, as discussed below, the court need not address County Defendant's arguments regarding qualified or Eleventh Amendment immunity.  (Dkt. No. 61, Attach. 1 at 5-7.)

when to prosecute, whether to dismiss an indictment against particular

defendants, which witnesses to call, and what other evidence to present."

*Id.* (internal quotation marks and citation omitted).  However, absolute

immunity only protects conduct that is "intimately associated with the

judicial process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and does

not extend to the prosecutor's role as an investigator, *see Hill v. City of

New York*, 45 F.3d 653, 661 (2d Cir. 1995).

Here, Levine bases his claim against Griggs on the fact that she

"offered legal advice to . . . Altieri."  (Dkt. No. 71 at 4.)  Specifically, the

complaint alleges that Griggs "counseled [Altieri] about the propriety and

legality of the investigation of" Levine, "counseled [him] to continue the

investigation and upon receiving the search warrant results, to contact

her," and "counseled [Altieri and Patenaude] about the propriety and

legality of arresting" Levine after receiving the results of the search

warrant.  (Compl. ¶¶ 59, 61.)  These actions, which the complaint later

characterizes as "determining whether probable cause existed in a legal

capacity," (*id.* ¶ 106), are akin to the advocacy functions discussed in

*Giraldo*, and, thus, prosecutorial immunity applies.  *See Giraldo*, 694 F.3d

at 165; *see also O'Neal v. Morales*, 679 F. App'x 16, 18 (2d Cir. 2017)

19

(noting that prosecutorial immunity covers the actions of a prosecutor unless she "performs the investigative functions normally performed by a detective or police officer, such as searching for . . . clues and corroboration" (internal quotation marks and citation omitted)). Accordingly, Levine's 42 U.S.C. §§ 1983 and 1985(3) claims against Griggs are dismissed.

Levine's 42 U.S.C. §§ 1983 and 1985(3) claims against Soares are also dismissed, as the complaint does not allege his personal involvement in the investigation or prosecution of Levine, other than by alleging that "Griggs . . . [is] an agent of . . . Soares."[8]  (Compl. ¶ 17); *see Sant v. Stephens*, 821 F. App'x 42, 45 (2d Cir. 2020) (noting a plaintiff must allege defendant's personal involvement in the violation of plaintiff's constitutional rights under 42 U.S.C. §§ 1983 and 1985); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (finding that there is no personal

_____

[8]  The complaint makes the occasional stray, conclusory, allegation that "Soares . . . counseled [Altieri and Patenaude] in an advisory function in the investigative phase of [Levine's] criminal case," however this is contradicted by the remainder of the complaint which states that Griggs was the prosecutor who "counseled" Altieri and Patenaude, and describes their interactions in detail.  (Compl. ¶¶ 59, 61); *see Rekowicz ex rel. Congemi v. Sachem Cent. Sch. Dist.*, No. 11-CV-1561, 2012 WL 4172487, at *1 (E.D.N.Y. Sept. 17, 2012) (dismissing 42 U.S.C. § 1983 where "[p]laintiff ha[d] not provided anything beyond conclusory allegations of the individuals' personal involvement in any . . . violations").

involvement of a supervisor unless "a plaintiff . . . plead[s] . . . that [the supervisor] defendant, through [their] own individual actions, has violated the Constitution." (internal quotation marks and citation omitted)).

### 2. *Monell Liability*

County Defendants seek dismissal of Levine's *Monell* claim because Levine does not allege with any particularity a policy, practice, or custom by County Defendants that resulted in Levine's alleged constitutional deprivation. (Dkt. No. 61, Attach. 1 at 7-9.) Levine counters, in a confusing fashion, prosecutorial immunity does not apply because, in other litigation it was determined that the Albany County District Attorney's Office withheld exculpatory evidence from a criminal defendant and "denial of equal protection by County [o]f Albany without proof of a racially discriminatory motive." (Dkt. No. 71 at 12-13.) Additionally, Levine argues that "[t]here cannot be a reliance on any 'prosecutor professional training' when the issue is legal advice, not the actual prosecution of [Levine] which was initiated by . . . Altieri on a DAT not Griggs or . . . Soares." (*Id.* at 14.) The clearest indication of Levine's position is his statement that he "has pled sufficient facts to establish that if a proper policy had been in place by the County of Albany it would have never offered legal advice to arrest a

21

pro-se civil litigant in violation of his clearly established [First] [A]mendment [rights]."  (Dkt. No. 71 at 12.)

A municipality may be liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To establish a municipal policy or custom, a plaintiff must allege (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes "a custom or usage"; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates.  *See Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006).

Levine's argument regarding the absence of "a proper policy," (Dkt. No. 71 at 12), is rejected.  *See Gerte v. Borough of Naugatuck*, No. 3:19-CV-1511, 2021 WL 1165362, at *6 (D. Conn. Mar. 26, 2021) ("Since the absence of policy is not a policy within the meaning of [*Monell*] liability, [p]laintiff's *Monell* claim . . . fails"); *accord Butchino v. City of Plattsburg*, No. 8:20-cv-796, 2022 WL 137721, at *8 (N.D.N.Y. Jan. 14, 2022).  And, to

22

the extent that Levine's *Monell* claim is premised on the theory that Albany

County failed to properly train or supervise its employees, his allegations

are wholly conclusory, (Compl. ¶¶ 105-06, 111, 117, 130, 133, 135, 143,

145, 207, 211), and cannot support his claim.  *See Johnson v. City of New

York*, No. 06 CV 09426, 2011 WL 666161, at *4 (S.D.N.Y. Feb. 2011)

(holding that a complaint that "contain[ed] only an unsupported conclusory

allegation that the [municipality] failed to train the individual [d]efendants"

could not survive a motion to dismiss because the complaint did not

contain facts that "plausibly allege[d] a specific deficiency in the training or

supervision program" (citation omitted)).  To the extent that Levine

premises his *Monell* claim on the fact that the Albany County District

Attorney's Office has "a de facto policy of offering improper legal advice,

practice, and/or custom of supporting the arrest of individuals who exercise

their rights under the First Amendment . . . to justify a productivity quota,"

such a claim is supported only by pure speculation.  (Compl. ¶¶ 4, 111,

117, 130, 158, 165, 172, 179, 207, 211); *see 5 Borough Pawn, LLC v. City

of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a

*Monell* claim where "plaintiffs fail[ed] to allege any facts showing that there

is a [municipal] policy—unspoken or otherwise—that violates the . . .

Constitution").  Finally, Griggs' alleged violation of Levine's constitutional rights cannot save his *Monell* claim.  *See Connick v. Thompson*, 563 U.S. 51, 63-64 (2011) (finding that a "single-incident" constituting a constitutional violation cannot support the conclusion that a municipality was failing to train or supervise its subordinates such to support a *Monell* claim); *see also Askew v. Lindsey*, No. 15-CV-7496, 2016 WL 4992641, at *4 (S.D.N.Y. 2016) ("[A] *Monell* claim cannot go forward based on . . . a single incident without more evidence that connects this incident to a municipal policy or practice." (citations omitted)).  Accordingly, Levine's *Monell* claim against County Defendants is dismissed.

**D.    NYSP Defendants**

    1.    *Corlett's Personal Involvement*

    NYSP Defendants contend that Corlett cannot be held individually liable under 42 U.S.C. §§ 1983 or 1985(3) because he was not personally involved in any of Levine's alleged constitutional harms.  (Dkt. No. 60, Attach. 2 at 23-24.)  Levine does not appear to respond to this argument, other than by noting that "Corlett was the Superintendent of the New York State Police during the time of [his] arrest."  (Dkt. No. 70 at 26.)

    Because Levine's complaint does not aver any personal involvement

of Corlett in his alleged constitutional deprivations, beyond the fact that he

served in a supervisory role, all causes of actions under §§ 1983 and 1985

against Corlett are dismissed, *see Sant*, 821 F. App'x at 45 (noting a

plaintiff must allege defendant's personal involvement in the violation of

plaintiff's constitutional rights under 42 U.S.C. §§ 1983 and 1985); *see also

Tangreti*, 983 F.3d at 618 (finding that there is no personal involvement of

supervisor unless "a plaintiff . . . plead[s] . . . [that the superior] defendant,

through [their] own individual actions, has violated the Constitution"

(internal quotation marks and citation omitted)), and the court declines to

exercise jurisdiction over any remaining state law claims against him.  *See

Clark*, 798 F. Supp. 2d at 408.  (Dkt. No. 70 at 11-13, 15-17.)

    2.   *First Amendment and Fourth Amendment Claims*

NYSP Defendants seek dismissal of Levine's First and Fourth

Amendment claims for false arrest and retaliation, because the action

giving rise to these claims—his arrest—was justified by probable cause.

(Dkt. No. 60, Attach. 1 at 9-12, 19-20.)  Levine disputes the existence of

probable cause.

A false arrest claim requires that "(1) the defendant intended to

confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3)

25

the plaintiff did not consent to the confinement, and (4) the confinement

was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d

Cir.1996).  The existence of probable cause to arrest "is a complete

defense to an action for false arrest." *Id.* at 852 (internal quotation marks

omitted).

"To state a First Amendment retaliation claim, a plaintiff must

establish that: (1) his speech or conduct was protected by the First

Amendment; (2) the defendant took an adverse action against him; and (3)

there was a causal connection between this adverse action and the

protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267,

272 (2d Cir. 2011) (citations omitted).  "[P]robable cause should generally

defeat a retaliatory arrest claim." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1727

(2019).

At this time, based solely on the complaint, it cannot be said as a

matter of law that probable cause to arrest Levine existed.  NYSP

Defendants' argument that O'Keefe's supporting deposition, which states

that Levine made false claims about his business and was attempting to

extort him, and the fact that Altieri and Patenaude "obtained a search

warrant for records from Indeed.com" showing "that O'Keefe Electric and

Regan Lawncare . . . did not have any job postings on Indeed.com,"

provided them with probable cause, is contradicted by the complaint.

(Compl. ¶¶ 62-65.)  In the complaint, Levine alleges that the job postings

were "plainly visible" online and that neither O'Keefe nor Regan provided

"proof or evidence" to Altieri or Patenaude "that [they] did not authorize, . . .

[or] post such position."  (Compl. ¶¶ 62-65.)  Accordingly, the motion to

dismiss is denied as to Altieri and Patenaude.[9]

### 3.   *Malicious Prosecution*

NYSP Defendants seek dismissal because Levine has not alleged

that "Altieri, or any [NYSP D]efendant, maintained control of the

prosecution of the criminal charges against plaintiff," and because probable

cause justified his prosecution.  (Dkt. No. 60, Attach. 2 at 13-15.)

Additionally, NYSP Defendants argue that Levine has failed to allege that

the criminal proceeding terminated in his favor, or that they acted with

_____

[9]  These claims are dismissed against all other remaining NYSP
Defendants because Levine makes no allegations that they were aware of
a lack of probable cause for his arrest.  (*See generally* Compl.)
Additionally, Levine's claim that NYSP Defendants "failed to intervene to
stop his arrest," (Compl. ¶ 201), cannot stand against any of the NYSP
Defendants besides Altieri, because the complaint does not allege any
other NYSP Defendant "had a realistic opportunity to intervene" and
"would know that [Levine's] constitutional rights were being violated."
*Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y.2010) (internal
quotations and citations omitted).

malice.  (*Id.* at 13-16.)  Levine counters that Altieri and Patenaude "fabricated evidence" and initiated his prosecution without probable cause. (Dkt. No. 70 at 14-18.)

To state a malicious prosecution claim pursuant to Section 1983, a plaintiff must plead the following elements: "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor."  *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (alterations and citation omitted).  "An arresting officer may be held liable for malicious prosecution if he or she played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  *Barone v. United States*, No. 12 Civ. 4103, 2014 WL 4467780, at *17 (S.D.N.Y. Sept. 10, 2014) (internal quotation marks and citation omitted).  "In addition, an officer will be liable for malicious prosecution if he or she creates false information likely to influence a jury's decision and forwards that information to prosecutors, or . . . withholds relevant and material information from the prosecutor."  *Id.* (internal quotation marks and citation omitted).

Regarding Altieri, Levine has plausibly alleged that he initiated his

criminal proceeding via two "accusatory instruments," (Compl. ¶ 73),

satisfying the first element of his claim against Altieri. *See Levine*, 2022

WL 1987845, at *13. Additionally, as noted earlier, at this juncture, it

cannot be said, as a matter of law that probable cause to arrest Levine

existed, (Compl. ¶¶ 62-65); *see supra* Part IV.D.2, and, therefore, the

second and third elements of Levine's claim are satisfied with respect to

Altieri. *See Crews v. County of Nassau*, 996 F. Supp. 2d 186, 207-08

(E.D.N.Y. 2014) ("[I]n most cases, a lack of probable cause—while not

dispositive—tends to show that the accuser did not believe in the guilt of

the accused, and malice may be inferred from the lack of probable cause."

(internal quotation marks, alterations, and citations omitted)); *see also*

*Levine*, 2022 WL 1987845, at *14 ("Thus, at this early stage, because

Plaintiff has alleged a lack of probable cause, the [c]ourt concludes that he

has also alleged malice."). Levine has also sufficiently pleaded the fourth

element of his claim, with respect to Altieri, by alleging that the criminal

proceedings terminated in his favor. (Compl. ¶ 87); *see Thompson v.*

*Clark*, 142 S. Ct. 1332, 1335 (2022) ("To demonstrate a favorable

termination of a criminal prosecution for purposes of the Fourth

Amendment claim under § 1983 for malicious prosecution, a plaintiff need

only show that his prosecution ended without a conviction.")  Accordingly, NYSP Defendants' motion is denied with respect to Altieri.

With respect to Patenaude, Potts, and Beaudoin, Levine does not sufficiently allege a malicious prosecution claim, as the complaint does not alleges that they initiated Levine's criminal proceeding, (Compl. ¶ 73),  and any argument that they "create[d] false information likely to influence a jury's decision," *see Barone*, 2014 WL 4467780, at *17, due to their involvement in the alleged fabrication of O'Keefe's supporting deposition, is wholly conclusory, (Compl. ¶ 264 ("[The NYSP Defendants] conspired with non-state actors to create false information in a supporting deposition.")). Accordingly, NYSP Defendants' motion is granted as to Levine's malicious prosecution claim against Patenaude, Potts, and Beaudoin.

### 4.   *Fabrication of Evidence*

NYSP Defendants argue that "[i]t is well settled that unspecified and unsubstantiated allegations of fabricated evidence and false statements along with conclusory allegations are insufficient to state a claim for fabrication of evidence."  (Dkt. No. 60, Attach. 2 at 22-23 (internal quotation marks and citation omitted).  Levine counters that Altieri "took a deposition concerning a civil matter and possible civil litigation by [Levine] and turned

it into a criminal deposition by . . . [O'Keefe] that did not even state a crime thus altering the trial process."  (Dkt. No. 70 at 25.)

To state a claim for fabrication of evidence, a plaintiff must allege that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394-95 (S.D.N.Y. 2016) (citing *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)).

NYSP Defendants are correct that any allegations that they were involved in the alleged fabrication of O'Keefe's supporting deposition are wholly conclusory, (Compl. ¶ 264 ("[NYSP Defendants] conspired with non-state actors to create false information in a supporting deposition.")). Accordingly, this cause of action is dismissed.  *See Levine*, 2022 WL 1987845, at *15 (concluding that "[p]laintiff's conclusory assertion that [d]efendants 'fabricated evidence'" was "insufficient to state a claim").

5.  *Equal Protection*

The NYSP Defendants argue that Levine's equal protection claim must be dismissed because any disparate treatment he faced was not motivated by discriminatory intent based on membership of a protected

31

class, nor has Levine demonstrated that he is a "class-of-one."  (Dkt. No. 60, Attach. 2 at 6-9.)  Levine counters in an unclear and contradictory fashion, appearing to allege that he is a member of a protected class due to his status as a formerly-incarcerated individual,[10] and also by attempting to make out a selective enforcement theory, but then notes that his complaint "clear[ly] and concise[ly] . . . only support[s] a 'class      [-]of[-]one' theory."  (Dkt. No. 70 at 9-11; *see* Compl. ¶ 103 ("Levine [is] an ex-offender, which is a protected class in New York State").)

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike." *Young v. Suffolk County*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, (1985)). When a plaintiff does not allege an equal protection violation due to their membership in a protected class, they may still prevail on their claim under a "class-of-one" theory.  *See NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177 (2d Cir. 2019) ("[T]he Supreme Court has . . . endorsed a class-of-one theory for equal protection claims, under which a single

---

[10]  To the extent Levine claims to be part of a protected class due his status as "an ex-offender," (Compl. ¶ 103), the court is not persuaded, *see Bottom v. Pataki*, No. 9:03-CV-835, 2006 WL 2265408, at *2 (N.D.N.Y.  Aug. 2006).

individual can claim a violation of her Equal Protection rights based on arbitrary disparate treatment." (internal quotation marks and citations omitted)); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To succeed under a class-of-one theory, a plaintiff must demonstrate "[1] that []he has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted).

Nowhere in Levine's complaint does he provide an example of a comparator who was treated differently than he was, (*see generally* Compl.), such to adequately plead his claim under a class-of-one theory, and, thus, his equal protection claim against NYSP Defendants is dismissed.  *See Levine*, 2022 WL 1987845, at *11 (dismissing equal protection claim brought under class-of-one theory where plaintiff "failed to allege facts regarding any comparator, much less one that is prima facie identical to him" (internal quotation marks and citations omitted)).

6.  *Fifth Amendment*

NYSP Defendants seek dismissal arguing that the Fifth Amendment does not apply here as it "governs the conduct of the federal government

and federal employees, and does not regulate the activities of state officials or state actors." (Dkt. No. 60, Attach. 2 at 20.) Levine counters that "Altieri, a private person acting under color of law, has not met his burden . . . that [his] unconstitutional conduct could not be attributed to the federal government." (Dkt. No. 70 at 22.)

Notwithstanding the NYSP Defendants' argument, the court construes Levine's cause of action as a "violation[] of his right against self-incrimination as guaranteed by the Fifth Amendment . . . as applied to the States and their political subdivisions through the Fourteenth Amendment." *Terracino v. Barr Pharm. Inc.*, No. 09 Civ. 09523, 2011 WL 1330776, at *1 (S.D.N.Y. Apr. 4, 2011). However, even assuming that Altieri's conduct, as alleged in the complaint, (Compl. ¶¶ 72, 170), was unconstitutional, Levine still has not stated a claim. "[A] § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiff['s] rights against self-incrimination and/or to obtain inculpatory statements, *and the statements thereby obtained were used against the plaintiffs in a criminal proceeding*." *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir.1998) (emphasis added). Even if Levine has plausibly alleged that Altieri

34

attempted to coerce him into answering  questions, "about [his] arrest" after

Levine had indicated that he wished to invoked his right against self-

incrimination, (Compl. ¶ 72), nowhere in the complaint does Levine allege

that he made a statement, let alone that the statement was used against

him in a subsequent criminal proceeding, (*see generally* Compl.).

Accordingly, this cause of action must be dismissed.  *See   Dunkelberger*

*v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *18 (S.D.N.Y.

Sept. 30, 2015) (collecting cases).

### 7.    *Conspiracy Under § 1985(3)*

NYSP Defendants argue that Levine's § 1985(3) conspiracy claim

must be dismissed because Levine has not alleged membership of a

protected class, nor has he pleaded a conspiracy with the requisite

specificity.  (Dkt. No. 60, Attach. 2 at 17-19.)  Levine counters that he is a

member of a protected class "equal to sex, race, [and] age," due to his

criminal history and has pleaded "a minimal showing" such to "meet his

burden."  (Dkt. No. 70 at 19-20; Compl. ¶ 103.)

To state a cause of action under 42 U.S.C. § 1985(3), a plaintiff must

allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or

indirectly, any person or class of persons of the equal protection of the

laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (citation omitted). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

For the reasons already mentioned, *see supra* note 10, Levine has not adequately alleged any "racial or perhaps otherwise class-based" discrimination, and, accordingly, this cause of action is dismissed. *See id.* (quoting *Cine SK8*, 507 F.3d at 791); *see also Fox v. City of New York*, No. 03 Civ. 2268, 2004 WL 856299, at *9 (S.D.N.Y. Apr. 16, 2004) (finding, where plaintiff alleged "defendants allegedly acted with animus against criminal defendants," that "it is clear that such discrimination against criminal defendants is not within the narrow ambit that Congress intended when it enacted Section 1985(3)" (citations omitted)).

8.    *Other Bases for Dismissal*

Finally, NYSP Defendants contend that qualified immunity shields

36

them from liability, as does the Eleventh Amendment, to the extent they are sued in their official capacities.  (Dkt. No. 60, Attach. 2 at 5-6, 26.)  Levine contends that the Eleventh Amendment does not apply where a plaintiff seeks prospective relief, and that qualified immunity is inapplicable here. (Dkt. No. 70 at 4-8, 27-29.)

Sovereign immunity, the principle confirmed by the Eleventh Amendment, generally shields states, their agencies, and departments from suit in federal court absent consent, waiver, or abrogation.  *See Va. Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011); *Papasan v. Allain*, 478 U.S. 265, 276 (1986).  Under the *Ex parte Young*, 209 U.S. 123 (1908), exception, such immunity may also give way when the plaintiff seeks prospective relief from a state officer in certain circumstances.  *See Va. Office*, 563 U.S. at 254.  However, *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."  *P.R. Aqueduct and Sewer Auth. v. Mecalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see Pennington Seed, Inc. v. Produce Exch. No. 299, Allied Seed, L.L.C.*, 457 F.3d 1334, 1342 (Fed. Cir. 2006) ("[P]rospective injunctive relief can only be had against [a state official]." (emphasis added)).

37

Qualified immunity shields a government employee from liability in two circumstances: "(1) [when his] conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [his] acts did not violate these clearly established rights." *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (internal quotation marks, alteration, and citations omitted); *see supra* Part IV.C.1.  Additionally, a defendant bears the burden of proof in asserting a qualified immunity defense.  *See Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).  To meet this burden at the motion to dismiss stage, the "facts supporting the defense [must] appear on the face of the complaint," and a "plaintiff is entitled to all reasonable inferences from the facts alleged . . . that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

Levine does not specify what prospective relief he seeks in his complaint, and only states that he "seeks . . . injunctive and declaratory relief and such other relief as this [c]ourt deems equitable." (Compl. ¶ 1.) Affording Levine all the special solitude for which his pro se status entitles him, he has alleged no facts to plausibly suggest that the violations alleged in his complaint are ongoing.  Accordingly, the *Ex parte Young* doctrine

38

does not apply here and NYSP Defendants are immune from suit insofar as they are sued in their official capacities, with respect to any claims remaining against them, as discussed above.[11]  *See Levine*, 2022 WL 1987845, at *10 (finding, where plaintiff made only "vague assertion[s] that did not request specific injunctive or declaratory relief in his [c]omplaint . . . [that these] conclusory assertions [we]re insufficient to invoke the exception for prospective injunctive relief to sovereign immunity under the *Ex [p]arte Young* doctrine").

Additionally, here, NYSP Defendants' one sentence argument that they "are entitled to qualified immunity with respect to [Levine]'s federal claims because, as discussed above, the [c]omplaint is deficient of facts from which it could be plausibly inferred that a violation of [Levine]'s constitutional rights occurred," is insufficient to establish the defense at this stage.  *See Ziemba v. Lynch*, No. 11-cv-974, 2013 WL 5232543, at *9 (D. Conn. Sept. 17, 2013) (denying motion to dismiss on qualified immunity where defendant "only include[d] the legal standard for establishing

---

[11]  Regardless of the type of relief sought by Levine, the Eleventh Amendment would shield the New York State Police and Troop G.  *See P.R. Aqueduct and Sewer Auth.*, 506 U.S. at 146 (1993) (finding *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought").

qualified immunity and, in a conclusory manner, state[d] that the claims . . . are subject to dismissal based on" that ground)*; see also Levine*, 2022 WL 1987845, at *17.

### E.   **Motion to Amend**

Because Levine's motion to amend only seeks to amend the complaint to correct two "caption scrivener error[s]," regarding two defendants who are dismissed from this action, (Dkt. No. 56 at 1), the motion is denied as moot.

## V.  **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that complaint is construed as alleging the following claims: First Amendment retaliation, Fourth Amendment false arrest, Fourteenth Amendment equal protection, Fourth Amendment malicious prosecution, Fifth Amendment right against self-incrimination, Fourth Amendment failure to intervene, Sixth Amendment fabrication of evidence, all pursuant to 42 U.S.C. § 1983, against defendants Altieri, Patenaude, Potts, Beaudoin, Soares, Griggs, Corlett, O'Keefe, and Private Actor Defendants; Fourth Amendment excessive force, pursuant to 42 U.S.C. § 1983, against Potts; a conspiracy claim pursuant to § 1985(3) against

defendants Altieri, Patenaude, Potts, Beaudoin, Soares, Griggs, Corlett, Private Actor Defendants; a *Monell* claim against defendants Albany County and the Albany County District Attorney's Office; and numerous state law claims against O'Keefe, Regan, O'Keefe Electrical LLC, and Regan Lawncare; and it is further

**ORDERED** that O'Keefe and Okeefe Electric's motion to dismiss (Dkt. No. 39) is **GRANTED** and O'Keefe and Okeefe Electric are **DISMISSED** from this action; and it is further

**ORDERED** that Regan and Regan Lawncare's motion to dismiss (Dkt. No. 48) is **GRANTED** and Regan and Regan Lawncare are **DISMISSED** from this action; and it is further

**ORDERED** that County Defendants' motion for judgment on the pleadings (Dkt. No. 61) is **GRANTED** and Albany County, the Albany County District Attorney's Office, Griggs, and Soares are **DISMISSED** from this action; and it is further

**ORDERED** that NYSP Defendants' motion for judgment on the pleadings (Dkt. No. 60) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to all claims against the New York State Police,

Troop G, Corlett, and Beaudoin, and the New York State

Police, Troop G, Corlett, and Beaudoin, are **DISMISSED** from

this action;

**GRANTED** as to all claims against Alteri, Patenaude, and Potts

in their official capacities;

**GRANTED** as to Levine's § 1983 Fourteenth Amendment equal

protection claim, § 1983 Fourth Amendment malicious

prosecution claim, § 1983 Fifth Amendment right against self-

incrimination claim, § 1983 Fourth Amendment failure to

intervene claim, § 1983 Sixth Amendment fabrication of

evidence claim, and § 1985(3) conspiracy claim as against

Patenaude in his individual capacity;

**GRANTED** as to Levine's § 1983 Fourteenth Amendment equal

protection claim, § 1983 Fifth Amendment right against self-

incrimination claim, § 1983 Sixth Amendment fabrication of

evidence claim, and § 1985(3) conspiracy claim as against

Altieri in his individual capacity;

**GRANTED** as to a Levine's  § 1983 First Amendment

retaliation claim, § 1983 Fourth Amendment false arrest claim,

§ 1983 Fourteenth Amendment equal protection claim, § 1983 Fourth Amendment malicious prosecution claim, § 1983 Fifth Amendment right against self-incrimination claim, § 1983 Fourth Amendment failure to intervene claim, § 1983 Sixth Amendment fabrication of evidence claim, and § 1985(3) conspiracy claim as against Potts in his individual capacity;

**DENIED** as to Levine's § 1983 First Amendment retaliation claim and § 1983 Fourth Amendment false arrest claim as against Patenaude in his individual capacity;

**DENIED** as to Levine's § 1983 First Amendment retaliation claim, § 1983 Fourth Amendment false arrest claim, § 1983 Fourth Amendment malicious prosecution claim, and § 1983 Fourth Amendment failure to intervene claim as against Altieri in his individual capacity;

**DENIED** as to Levine's § 1983 Fourth Amendment excessive force claim as against Potts in his individual capacity; and it is further

**ORDERED** that the following claims remain: Levine's (1) § 1983 First Amendment retaliation claim against Altieri and Patenaude in their

individual capacities, (2) § 1983 Fourth Amendment false arrest claim against Altieri and Patenaude in their individual capacities, (3) § 1983 Fourth Amendment malicious prosecution claim against Altieri in his individual capacity, (4) § 1983 Fourth Amendment failure to intervene claim against Altieri in his individual capacity, and (5) § 1983 Fourth Amendment excessive force claim against Potts in his individual capacity; and it is further

ORDERED that Levine's motion to amend (Dkt. No. 56) is DENIED as moot; and it is further

ORDERED that the parties shall contact Magistrate Judge Daniel J. Stewart to schedule further proceedings; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

IT IS SO ORDERED.

September 26, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge