UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHIE FOSTER LEVINE,

                                  Plaintiff,

                                                                    1:21-CV-0503
v.                                                                  (GTS/DJS)

MICHAEL ALTIERI, individually and in his
official capacity as New York State Investigator; and
TODD POTTS, individually and in his official
capacity as a Trooper,

                                  Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

RICHIE FOSTER LEVINE
    Plaintiff, *Pro Se*
P.O. Box 410
Hoosick Falls, NY 12090

HON. LETITIA JAMES                              MATTHEW GALLAGHER, ESQ.
Attorney General for the State of New York      GREGORY J. RODRIGUEZ, ESQ.
    Counsel for Defendants                       Assistant Attorney Generals
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* civil rights action brought by Richie Foster

Levine ("Plaintiff") against New York State Investigator Michael Altieri and New York State

Trooper Todd Potts ("Defendants"), are the following two motions: (1) Plaintiff's motion for

summary judgment pursuant to Fed. R. Civ. P. 56; and (2) Defendants' cross-motion for

summary judgment pursuant to Fed. R. Civ. P. 56.   (Dkt. Nos. 108, 110.)   For the reasons set

forth below, Plaintiff's motion for summary judgment is denied, and Defendants' cross-motion

for summary judgment is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, liberally construed, Plaintiff's *pro se* Complaint asserts the following 27 explicitly enumerated claims: (1) a violation of his First Amendment right to free speech and association under 42 U.S.C. § 1983; (2) a violation of his Fourth Amendment right to be free from unlawful searches and seizure under 42 U.S.C. § 1983; (3) a violation of his Fifth Amendment right against self-incrimination under 42 U.S.C. § 1983; (4) a violation of his Fourteenth Amendment right of equal protection of the law under 42 U.S.C. § 1983; (5) false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (6) malicious prosecution pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (7) failure to intervene in a violation of the Fourth Amendment and 42 U.S.C. § 1983; (8) a *Monell* claim against various municipal defendants; (9) intentional infliction of emotional distress purportedly pursuant to 42 U.S.C. § 1983; (10) false imprisonment pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (11) conspiracy to violate his civil rights pursuant to 42 U.S.C. § 1985; (12) retaliation for exercise of his rights under the First Amendment and 42 U.S.C. § 1985; (13) abuse of process pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (14) intentional or malicious harm purportedly pursuant to 42 U.S.C. § 1983; (15) negligence purportedly pursuant to 42 U.S.C. § 1983; (16) fabrication of evidence pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (17) a violation of his free speech rights under Article 1, Section 8 of the New York Constitution; (18) a violation of New York Labor Law § 740; (19) a violation of New York General Business Law § 349; (20) a violation of New York General Business Law § 350; (21) a violation of New York

Corrections Law Article 23-A, § 752; (22) a violation of New York Corrections Law Article 23-A, § 753; (23) a violation of New York Corrections Law Article 23-A, § 754; (24) a violation of New York Executive Law § 296(7); (25) a violation of New York Executive Law § 296(15); (26) defamation; and (27) liability under a "cat's paw theory" pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.)

Because most of these alleged claims have been dismissed as will be discussed in the following section, the Court will not go into further detail regarding the factual allegations giving rise to each of these claims or the specific Defendants against whom each claim is asserted.

### B.  Procedural History

Defendants previously filed, at various times, motions to dismiss Plaintiff's claims. (Dkt. Nos. 39, 48, 60, 61.)   On September 26, 2022, U.S. District Judge Gary L. Sharpe issued a Decision and Order resolving those four motions.   (Dkt. No. 74.)   In that Decision and Order, District Judge Sharpe ordered that all claims against Robert O'Keefe, O'Keefe Electric, Matthew Regan, Regan Lawncare and Landscape, Inc. ("Regan Landscape"), the County of Albany, the Albany County District Attorney's Office, Assistant District Attorney Linda Griggs, District Attorney P. David Soares, the New York State Police, Troop G, Superintendent Keith M. Corlett, and Trooper Daniel Beaudoin be dismissed, as well as (a) claims against Defendant Altieri, Defendant Potts, and Major Robert Patenaude in their official capacities, (b) claims for denial of equal protection, malicious prosecution, right against self-incrimination, failure to intervene, fabrication of evidence, and conspiracy against Major Patenaude in his individual capacity, (c) claims for denial of equal protection, right against self-incrimination, fabrication of evidence, and conspiracy against Defendant Altieri in his individual capacity, and (d) claims for First

3

Amendment retaliation, false arrest, denial of equal protection, malicious prosecution, right against self-incrimination, failure to intervene, fabrication of evidence, and conspiracy against Defendant Potts in his individual capacity.   (*Id.*)   The following claims were found to survive the motions: (1) claims for First Amendment retaliation and false arrest against Major Patenaude in his individual capacity; (2) claims for First Amendment retaliation, false arrest, malicious prosecution, and failure to intervene against Defendant Altieri in his individual capacity; and (3) a claim of excessive force against Defendant Potts in his individual capacity.   (*Id.*)

Further, on November 15, 2023, the Court adopted a stipulation of dismissal signed by both parties that dismissed the remaining claims asserted against Major Patenaude.   (Dkt. No. 101.)   As a result, the only claims that remain in this action at this stage are those against Defendants Altieri and Potts specified in the above paragraph.

### C.     Undisputed Material Facts on Cross-Motions for Summary Judgment

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises."   N.D.N.Y. L.R. 56.1(b).   This requirement is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties."   *LaFever v. Clarke*, 17-CV-1206, 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (Hurd, J.) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 284 [N.D.N.Y. 2019] [Hurd, J.]).   Indeed, "[a] proper response to a movant's

statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'"   *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v. Adams*, 16-CV-0845, 2018 WL 5297809, at *2 [N.D.N.Y. Oct. 25, 2018] [Hurd, J.]).   "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."   N.D.N.Y. L.R. 56.1(b).

Applying this legal standard here, the following facts have been asserted and supported by record citations by Defendants, and either expressly admitted or denied without a supporting record citation by Plaintiff.[1]

## Plaintiff's Statement of Undisputed Material Facts

1.      Section 754 of N.Y. Correction Law states that, "[a]t the request of any person previously convicted of one or more criminal offenses who has been denied a license or employment, a public agency or private employer shall provide, within thirty days of a request, a written statement setting forth the reasons for such denial."

2.      Plaintiff is a person who, at the time of the relevant arrest on February 29, 2020, had three prior misdemeanor convictions and one prior felony conviction.

3.      Plaintiff sent a letter pursuant to N.Y. Corr. L. § 754 to Regan Landscape on November 4, 2019.

4.      Plaintiff was an applicant for employment with Regan Landscape at the time he sent that letter.

---

[1]      The Court notes that, on March 19, 2024, Plaintiff was mailed a Notification of the Consequences of Failing to Respond to a Summary Judgment motion.   (Dkt. No. 111.)   In addition, on April 30, 2021, he acknowledged receipt of a courtesy copy of the District's Local Rules of Practice (including Local Rule 56.1) and the District's *Pro Se* Handbook (which includes a section on opposing motions for summary judgment).   (Dkt. No. 4.)

5.      Plaintiff sent a letter pursuant to N.Y. Corr. L. § 754 to O'Keefe Electric, LLC, on January 13, 2020.

6.      In these letters, Plaintiff requested a good-faith settlement proposal and response to the letter.   He stated that, if he received no response, he reserved the right to pursue any and all available legal and equitable remedies, including but not limited to instituting formal litigation proceedings against the company, and also stated that the letter was for settlement purposes only.

7.      Robert O'Keefe, the owner of O'Keefe Electric, sent a letter to Plaintiff dated January 16, 2020.

8.      Defendant Altieri became aware of Plaintiff's letter to O'Keefe Electric on January 24, 2020, when he met Robert O'Keefe at the Cumberland Farms in the Town of Rotterdam while he was out on patrol.

9.      A search warrant was issued by an Albany County Court judge on January 27, 2020, upon an application by Defendant Altieri seeking information from Indeed.com in relation to potential instances of (1) Attempted Grand Larceny -- Extortion in the Second Degree, (2) Forgery in the Second Degree, and (3) Falsifying Business Records in the Second Degree.

10.     Defendant Altieri's stated basis for applying for a search warrant for Indeed.com was a suspicion that the job advertisement supposedly posted by O'Keefe Electrical was a fraudulent transaction and that it was Plaintiff who had posted the advertisement posing as the employer.

11.     Defendant Altieri stated in a sworn affidavit that Robert O'Keefe's business was located at 1971 Western Avenue, #231 in the Town of Guilderland in Albany County, New

6

York.

12.      In his sworn affidavit, Defendant Altieri stated that he "believe[d] that the requested examination of the requested records of [Plaintiff's] 'Indeed.com' account(s) . . . will identify [Plaintiff] as the person responsible for fraudulently posting a job under 'O'Keefe Electric', in his effort to obtain monies by threatening a lawsuit for suspected violations of the New York State Corrections Law Article 23-A, when in fact 'O'Keefe Electric' had not posted a job, nor a job on Indeed.com."

13.      Defendant Altieri was aware of Plaintiff's previous litigation efforts during his investigation.

14.      Defendant Altieri searched the internet regarding Plaintiff and observed that he had filed several frivolous lawsuits against Target, Walmart, CVS, Adecco, and other companies.

15.      Defendant Altieri claimed that he searched for the O'Keefe job position on January 25, 2020, but had been unable to find it such that he stated in his report that "it appears the job posting was taken down."

16.      Defendant Altieri indicated on February 24, 2020, that he had reviewed the results of the search warrant received from Indeed.com and that the documents received did not indicate any job postings from O'Keefe Electric nor any job applications to O'Keefe Electric by Plaintiff.

17.      In a supporting deposition appended to the initiating criminal Information, Robert O'Keefe stated the following:

> I am with Investigator Michael Altieri of the NYS Police. All information is true and correct concerning unwanted communications from an unknown individual by the name of Richie F. Levine who has made false advertisements/claims against my business O'Keefe Electric.   I received a letter from Levine stating that he has intent to sue me for violation of Corrections Law because I did not hire him from a job posting on "Indeed.com."   I never had a job posted on any website for my business.

> Levine claims that he is a convicted felon and applied for a job with my company and wasn't hired due to his conviction status.   He threatened to sue me/my company if I don't settle outside of court.   I had a deadline of 01/23/2020 from a letter of 01/13/2020.   I feel Levine is fraudulently trying to get money from me.   He is using extortion and threats to ruin my business and established name in the community.   I fear for my safety because I don't know what this person is capable of.   I want him arrested.

18.     When Plaintiff was arrested on February 29, 2020, he was conscious of the confinement.

19.     When Plaintiff was arrested on February 29, 2020, he did not consent to the confinement.

20.     Defendant Potts never had an arrest warrant or search warrant to enter Plaintiff's domicile on February 29, 2020.

21.     Defendant Potts put the handcuffs on Plaintiff tightly during the arrest.

22.     Defendant Altieri issued a Desk Appearance Ticket following Plaintiff's arrest on February 29, 2020.

23.     Defendant Altieri was employed by Troop G of the New York State Police and was acting in his capacity as a police officer at the relevant times.

24.     Defendant Potts was also employed by Troop G of the New York State Police and was acting in his capacity as a police officer on February 29, 2020, when he entered Plaintiff's domicile and arrested him.

25.     The charges brought in the Information were dismissed in Plaintiff's favor on January 21, 2021.

### Defendants' Statement of Undisputed Material Facts

1.     On January 24, 2020, after receiving a letter from Plaintiff, Robert O'Keefe of

O'Keefe Electric met with Defendant Altieri.

2.      That same day, an investigation into the matter was opened and Robert O'Keefe provided a supporting deposition to Defendant Altieri.

3.      In that deposition, Robert O'Keefe stated that Plaintiff made false claims against him and his business, that he feared for his business because he felt that Plaintiff was trying to fraudulently obtain money from him, and that he feared for his personal safety because he did not know Plaintiff or what he was capable of.

4.      Following the meeting with Robert O'Keefe, Defendant Altieri performed an internet search regarding Plaintiff and discovered that Plaintiff had filed several lawsuits against multiple companies in the past.

5.      Defendant Altieri tried to contact Plaintiff concerning the claims made against Robert O'Keefe but was unsuccessful.

6.      The same day, Defendant Altieri spoke with Plaintiff's counsel on the telephone and was advised that Plaintiff was invoking his right to remain silent and that Defendant Altieri was to stop all communications with Plaintiff.

7.      The following day, Defendant Altieri received correspondence from Plaintiff's counsel advising Defendant Altieri to stop all communications with Plaintiff.

8.      Defendant Altieri searched Indeed.com for the purported job posting by O'Keefe Electric but that search did not reveal any such posting.

9.      On January 26, 2020, Defendant Altieri obtained a search warrant for records maintained by Indeed.com related to Plaintiff.

10.      On February 24, 2020, Defendant Altieri reviewed the information received from

Indeed.com pursuant to the search warrant.

11.     Those records did not indicate any job postings from O'Keefe Electric nor any applications to O'Keefe Electric by Plaintiff.

12.     Pursuant to the foregoing information, Defendant Altieri requested that Defendant Potts arrest Plaintiff on February 29, 2020.

13.     Plaintiff was arrested inside his apartment by Defendant Potts.

14.     Plaintiff was handcuffed with his hands in front of his body.

15.     Plaintiff never voiced any complaints that his handcuffs were too tight or that he was uncomfortable or in pain.

16.     Plaintiff was released following processing and was issued a Desk Appearance Ticket requiring him to appear in Guilderland Town Court on March 12, 2020.

17.     Due to the COVID-19 pandemic, Plaintiff's arraignment was delayed several months, and Plaintiff was eventually arranged on August 6, 2020.

18.     After Plaintiff had made several appearances at the Guilderland Town Court between August 2020 and January 2021, the charges against him were ultimately dismissed on January 25, 2021.

**D.     Parties' Arguments on Their Cross-Motions for Summary Judgment**

**1.     Plaintiff's Memorandum of Law**

Generally, in his motion, Plaintiff makes five arguments.   (Dkt. No. 108, Attach. 2.) First, Plaintiff argues that, as to his First Amendment retaliation claim, (a) his action of sending letters asserting his rights under N.Y. Corr. L. § 754 is protected speech, (b) that speech and his advocacy for persons with criminal convictions was a substantial motivating factor in the

decision to arrest him, and (c) his arrest was an adverse action that deterred him from continuing to engage in such protected speech.   (*Id.* at 9-13.)   Plaintiff also argues that his right to be free from such retaliation was clearly established at the relevant time and Defendant Altieri was specifically aware that his actions violated Plaintiff's constitutional rights, thus precluding the application of the defense of qualified immunity.   (*Id.*)

Second, Plaintiff argues that, as to his false arrest claim, there is no genuine dispute of material fact as to whether he meets all of the required elements of such a claim, because there was no probable cause to arrest him or to believe a crime was committed at the time of his arrest, and, rather than having probable cause, Defendant Altieri included knowingly false statements within his affidavit in order to support the criminal information that led to his arrest.   (*Id.* at 13-18.)

Third, Plaintiff argues that, as to his malicious prosecution claim, that claim also succeeds based on the lack of probable cause to commence that prosecution and the fact that the undisputed evidence shows that Defendant Altieri acted maliciously in that he ignored evidence that no crime had been committed and lied in his affidavit to support the charges.   (*Id.* at 18-26.)

Fourth, Plaintiff argues that, as to his failure-to-intervene claim, Defendant Altieri should have intervened to stop Defendant Potts from arresting him because he had information showing that Plaintiff had not committed any crime and he had a duty as a police officer to prevent a wrongful arrest.   (*Id.* at 26-27.)

Fifth, Plaintiff argues that, as to his excessive force claim, any force used by Defendant Potts to effectuate the arrest was excessive because the arrest itself was not lawful, in part because it was effectuated without an arrest warrant or search warrant, and specifically

Defendant Potts placed the handcuffs on him in a manner that was too tight and which caused

him pain in his wrists for weeks after the arrest.   (*Id.* at 27-32.)

> ### 2.   Defendants' Opposition Memorandum of Law and Memorandum of Law in Support of Their Cross-Motion

Generally, in their response and cross-motion, Defendants make five arguments.   (Dkt.

No. 110, Attach. 5.)   First, Defendants argue that Plaintiff's false arrest claim fails because,

contrary to Plaintiff's argument, the undisputed evidence establishes that probable cause for such

arrest existed in the form of information provided to Defendant Altieri by Robert O'Keefe and

obtained related to the search warrant of Indeed.com, which revealed that O'Keefe Electric had

not posted any job on that website.   (*Id.* at 8-11.)   Defendants further argue that Plaintiff cannot

assert a false arrest claim based on the fact there was no arrest or search warrant at the time he

was arrested in his home because he has not pled any such claim in his Complaint and,

notwithstanding, the existence of probable cause would defeat any such claim.   (*Id.*)

Second, Defendants argue that Plaintiff's claims for First Amendment retaliation,

malicious prosecution, and failure to intervene must all be dismissed based on the existence of

probable cause.   (*Id.* at 12-13.)

Third, Defendants argue that Plaintiff has not presented evidence raising a genuine

dispute of material fact regarding whether excessive force was applied at the time of his arrest

because Plaintiff has admitted that he did not complain of pain or discomfort or otherwise signal

any distress at the time he was handcuffed, and there is no evidence that he actually sustained

any injury from being handcuffed other than some minor discomfort.   (*Id.* 14-15.)

Fourth, Defendants argue that Defendant Altieri is entitled to qualified immunity based

on the fact that at least arguable probable cause existed to arrest Plaintiff and therefore his

actions toward Plaintiff were sufficiently reasonable.   (*Id.* at 15-16.)

Fifth, Defendants argue that, in the alternative, if the Court finds that it cannot grant

Defendants' cross-motion for summary judgment, it should deny Plaintiff's motion because there

are at the very least genuine disputes of material fact regarding the existence of probable cause,

malice, and the excessiveness of the handcuffing to preclude such an outcome.   (*Id.* at 16-17.)

Moreover, Defendants argue that Plaintiff's motion should be denied because he has failed to

properly serve that motion on Defendants.   (*Id.*)

### 3.    Plaintiff's Reply Memorandum of Law and Opposition Memorandum of Law

Generally, in his separately filed reply and opposition memoranda, Plaintiff collectively

makes five arguments.   (Dkt. Nos. 112, 116.)[2]   First, Plaintiff argues that Defendants have

failed to establish that probable cause existed to arrest him, because the information used to

justify that arrest is based on naked conclusory assertions rather than any evidence, and his act of

sending letters related to protecting his rights under New York state law cannot be considered to

be criminal activity supporting such arrest.   (Dkt. No. 112, at 1-3; Dkt. No. 116, at 4-14.)

Second, Plaintiff argues that, because there was no probable cause to support the arrest,

Defendant Altieri had a duty to prevent that arrest, but failed to do so despite being aware of the

fact that Plaintiff had not committed any crime.   (Dkt. No. 112, at 3-4; Dkt. No. 116, at 4-14.)

Third, Plaintiff argues that Defendant Potts used excessive force when handcuffing him

because he did so "extremely tight and without an arrest warrant or search warrant," and that

Plaintiff was not required to tell Defendant Potts that the handcuffs were too tight in order to be

---

[2]    Although Defendants filed their reply on their cross-motion without prior leave of the
Court in violation of Local Rule 7.1(c) (of which they are hereby respectfully reminded), the
Court has excused that violation under the circumstances, and will consider their reply.

able to establish his claim because "[t]hat is up to Defendant Potts to know" and pictures prove

he had injuries to his wrists following the handcuffing.   (Dkt. No. 112, at 4-5; Dkt. No. 116, at

16-17.)

Fourth, Plaintiff argues that Defendants are not entitled to the defense of qualified

immunity because they have failed to show that probable cause existed at any time to justify his

arrest and prosecution and because Plaintiff's actions at all times were lawful and permissible.

(Dkt. No. 112, at 5-6; Dkt. No. 116, at 17-18.)

Fifth, Plaintiff argues that Defendant's cross-motion for summary judgment should be

denied because there is no issue of fact regarding whether Defendants lacked probable cause, and

the record clearly shows malice based on (a) the fact that Defendant Altieri and Robert O'Keefe

knew each other from high school, (b) comments made by Defendant Altieri to Plaintiff, and (c)

Defendant Altieri's failure to properly investigate the matter.   (Dkt. No. 112, at 6-7; Dkt. No.

116, at 14-16, 18-19.)   Plaintiff further argues that he has not failed to properly serve

Defendants with his own motion because evidence substantiates that Defendants' counsel agreed

to be served by email.   (Dkt. No. 112, at 7; Dkt. No. 116, at 19.)

### 4.    Defendants' Reply Memorandum of Law[3]

Generally, in their reply memorandum of law, Defendants argue that probable cause

existed to arrest Plaintiff, because, contrary to Plaintiff's arguments, probable cause does not

require establishing that Defendants could have made a prima facie case of the relevant criminal

charges, but requires only a showing that it was probable, based on the known information, that

Plaintiff had committed those crimes, as well as that, under New York law, wrongful or bad faith

---

[3]    Although Plaintiff improperly separated his reply and opposition memoranda of law in
violation of Local Rule 7.1(c) (of which he is hereby respectfully reminded), the Court has
excused that violation under the circumstances, and will consider them.

threats of lawsuits can be considered to be extortionary conduct.   (Dkt. No. 117, at 3-5.)

Defendant further argue that the facts known to Defendant Altieri at the relevant time did indeed

suggest that it was probable that the letter Plaintiff sent to O'Keefe Electric was an attempt to

extort money from or otherwise defraud that entity.   (*Id.*)

## II.    LEGAL STANDARDS GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law."   Fed. R. Civ. P. 56(a).   A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]."   *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]   As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted."   *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant.   *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact."   *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).   However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.   Fed. R. Civ.

---

[4]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact."   *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)
[citation omitted].   As the Supreme Court has explained, "[The non-movant] must do more than
simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).   What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[5]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[5]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.   N.D.N.Y. L. R. 56.1(b).

Rule 7.1(a)(3).[6]   Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possess facial merit, which has appropriately been characterized as a "modest" burden.   *See*

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested

therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL

2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

### A.   Whether the Undisputed Evidence Shows that Probable Cause Existed Related to Plaintiff's Claims of False Arrest, Retaliation, and Malicious Prosecution

After careful consideration, the Court answers this question in the affirmative for

Plaintiff's claims of false arrest, retaliation, and malicious prosecution for the reasons stated in

Defendants' memoranda of law.   *See, supra* Parts I.D.2 and 4.   To those reasons, the Court adds

the following analysis.

Claims for arrest in retaliation for the exercise of First Amendment rights, false arrest,

and malicious prosecution all "may be defeated by the existence of probable cause."   *Rupp v.*

*Buffalo*, 91 F.4th 623, 638 (2d Cir. 2024) (citing *Nieves v. Bartlett*, 139 S.Ct. 1715 [2019]).

"[P]robable cause to arrest exists when 'the historical facts, viewed from the standpoint of an

---

[6]      *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*,
02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming
plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a

objectively reasonable police officer' . . . provide knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Rupp*, 91 F.4th at 639 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 [1996]; citing *Devenpeck v. Alford*, 543 U.S. 146, 152-53 [2004]; *Whren v. United States*, 517 U.S. 806, 813 [1996]).   "Probable cause may also exist where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citing *Hill v. California*, 401 U.S. 797, 803-04 [1971]).   Whether probable cause for an arrest exists "must be determined on the basis of the information reasonably available to the arresting officer *at the time of the arrest*." *Rupp*, 91 F.4th at 639 (emphasis in original).

Here, despite Plaintiff's various arguments to the contrary, there is no genuine dispute of fact that probable cause existed to support his arrest.   Specifically, the undisputed evidence related to the letter Plaintiff sent to Robert O'Keefe, the information Mr. O'Keefe provided to Defendant Altieri, and the results of the Indeed search warrant that confirmed both that O'Keefe Electric did not post the relevant job listing and that Plaintiff had never applied for a job on Indeed with O'Keefe Electric provided sufficient basis for Defendant Altieri to reasonably believe that Plaintiff was engaged in an effort to fraudulently extort money from O'Keefe Electric and/or Robert O'Keefe.

The fact that Plaintiff disagrees that his letter to O'Keefe Electric was an attempt to extort that employer is insufficient to create a genuine dispute of fact.   (Dkt. No. 108, Attach. 3, at ¶ 6.)   Rather, a reasonable officer could construe that letter as such, especially when such interpretation was made in conjunction with the other statements to Defendant Altieri about the

concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

circumstances, such as that Robert O'Keefe informed him that O'Keefe Electric had not posted

any job advertisement (a fact that was confirmed by the results of the Indeed.com search

warrant), and a search that revealed that Plaintiff had filed "several frivolous lawsuits" against

companies in the past.   (Dkt. No. 108, Attach. 4, at 21.)   Specifically, the letter itself seeks to

induce O'Keefe Electric to "settle the matter financially" (contrary to Plaintiff's assertion in his

affidavit that "[n]owhere in either letter do I mention anything financial"), repeatedly emphasizes

the potential "significant" costs of failing to settle, and imposes a relatively short (ten day)

deadline in which to submit a settlement proposal.   (Dkt. No. 108, Attach. 3, at ¶ 6; Dkt. No.

108, Attach. 3, at 31.)   The Court finds that no reasonable factfinder could conclude, based on

the documentation of what information Defendant Altieri was aware of at the time of the arrest,

that it was unreasonable for Defendant Altieri to believe that at least the crime of Attempted

Grand Larceny in the Fourth Degree based on extortion had been committed.   Probable cause to

sustain an arrest on at least one charge is sufficient to defeat a claim for false arrest because "a

claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . .

it is not relevant whether probable cause existed with respect to each individual charge, or

indeed, any charge actually invoked by the arresting officer at the time of arrest."   *Jaegly v.

Crouch*, 439 F.3d 149, 154 (2d Cir. 2006).

      That innocent explanations might have existed, such as that Plaintiff may have truly

thought he had applied to a job posting from O'Keefe Electric on Indeed.com and sent the letter

in a good-faith exercise of his legal rights, does not negate the existence of probable cause.   *See

D'Angelo v. Kirschner*, 288 F. App'x 724, 725 (2d Cir. 2008) ("[T]hat an innocent explanation

'may be consistent with the facts alleged does not negate probable cause.'"); *Panetta v. Crowley*,

460 F.3d 388, 395-96 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts allege does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").   In the absence of any evidence that Defendant Altieri purposefully ignored evidence or unreasonably relied on untrustworthy information, the fact that he ultimately turned out to be incorrect does not render him liable in this case for the claims related to Plaintiff's arrest.

In the malicious prosecution context, probable cause is established by "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021).   The Second Circuit has recognized that "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 [2d Cir. 2013]). Further, even if probable cause exists to prosecute at the initiation of a criminal proceeding, it may "'dissipate' after an arrest 'if the groundless nature the charges [is] made apparent by the discovery of some intervening fact.'" *Moore v. City of New York*, 854 F. App'x 397, 399 (2d Cir. 2021) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 [2d Cir. 1996]). Moreover, unlike a claim for false arrest, a claim for malicious prosecution *does* require that probable cause be shown for each charge for which a plaintiff was prosecuted. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. — , 144 S.Ct. 1745 (2024); *see Hogan v. Lewis Cnty.*, 16-CV-1325, 2018 WL 4689094, at *12 (N.D.N.Y. Sept. 28, 2018) (Kahn, J.) ("Probable cause

must be shown as to each criminal charge underlying the malicious prosecution claim.") (quoting *Burton v. Undercover Officer*, 671 F. App'x 4, 5 [2d Cir. 2016] [citing cases]).[7]

The Court finds that the undisputed evidence presented with the motions meets this slightly higher standard as to the prosecution for the charge of Attempted Grand Larceny in the Fourth Degree for many of the same reasons discussed above related to the existence of probable cause to sustain an arrest for that charge.   Contrary to Plaintiff's argument in his memoranda, there is no admissible record evidence to support a reasonable finding that Defendant Altieri knowingly made any false statements in either an arrest affidavit or the Information underlying his prosecution as to this charge that would bear upon the probable cause determination.   (Dkt. No. 108, Attach. 2, at 20-21.)

As to the charge of Attempted Scheme to Defraud in the Second Degree, N.Y. Pen. L. § 190.60(1) states, "A person is guilty of a scheme to defraud in the second degree when he engages in a scheme constituting a systematic course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons."   N.Y. Pen. L. § 190.60(1).   This section requires proof of "the identity of at least one person from whom the defendant so obtained property, but it shall not be necessary to prove the identity of any other intended victim."   N.Y. Pen. L. § 190.60(2).

Here, the Information for this charge specifically relies on the conduct against O'Keefe Electric that was already discussed related to the other charge brought and Defendant Altieri had probable cause to believe O'Keefe Electric was an intended victim of fraudulent conduct by

---

[7]     Notably, Defendants do not address any of these differences in the legal standards for probable cause applicable to the different claims, and instead merely argue in a cursory fashion that because probable cause to arrest existed, so did probable cause to prosecute.   (Dkt. No. 110,

Plaintiff for the reasons already discussed.   (Dkt. No. 108, Attach. 3, at 7.)   However, this specific charge requires the existence of more than one intended victim, and the Information further states that "[f]urthermore, LEVINE has attempted to defraud others by demanding payment for the alleged violation including Regan Landscape."   (*Id.*)

Because Defendant Altieri specifically identified Regan Landscape as another intended victim, the information known to Defendant Altieri regarding Plaintiff's dealings with Regan Landscape is relevant to the issue of probable cause.   Unfortunately, there is very little indication in the evidence provided by either party as to what information Defendant Altieri specifically knew about Plaintiff's 2019 job application for a snow plow position and conversations with Regan Landscape regarding that position, or about a previous lawsuit brought by Plaintiff against Regan Landscape in 2017 that was dismissed on a finding that Plaintiff was not qualified for the job for which he applied on that occasion.   It is clear that Defendant Altieri knew something regarding Regan Landscape given that he specifically named that company in the Information, but the extent of that knowledge cannot be determined on the record currently before the Court.

However, lack of information about knowledge regarding Regan Landscape is not fatal to Defendant Altieri's assertion of probable cause on this charge because, by the express terms of the relevant statute, proof of the identity of any second victim is not necessary to sustain a conviction on such charge, only that there were others that Plaintiff attempted to defraud.   To that effect, Defendant Altieri needed only to have probable cause to believe that Plaintiff had attempted to defraud more than one person, regardless of what the identity of any of those others apart from O'Keefe Electric may have been.   The Information itself states that Plaintiff

Attach. 5, at 12-13.)

attempted to defraud others, "including" Regan Landscape, language which suggests there may have been other individuals or companies of uncertain identity.

Regarding Defendant Altieri's knowledge of other potential victims of the charged scheme to defraud, Robert O'Keefe sent Defendant Altieri an email on January 22, 2020, in which he informed Defendant Altieri that "a quick Google search will show a few previous law suits he had with employers applying for jobs." (Dkt. No. 108, Attach. 4, at 21.) Defendant Altieri then conducted an internet search himself and noted in evidence that he "observe[d] that [Plaintiff] has filed several frivolous lawsuits against Target, Walmart, CVS, Adecco, and other companies." (Dkt. No. 108, Attach. 4, at 21; Dkt. No. 110, Attach. 2, at ¶ 10.) This evidence collectively shows that Defendant Altieri had knowledge of lawsuits Plaintiff had filed against multiple employers in the past related to applications for employment and that, from his review of information he found about those lawsuits, he believed those lawsuits to be "frivolous." Those lawsuits could lead a reasonably prudent person to believe that Plaintiff had engaged in a scheme to defraud other prospective employers in the past in a manner that satisfies the requirements of N.Y. Pen. L. § 190.60(1) and therefore are sufficient to establish probable cause for the initiation of prosecution of that charge.

The other disputed element of Plaintiff's malicious prosecution claim related to the charge of Attempted Scheme to Defraud in the Second Degree is whether Defendant Altieri acted with actual malice for his part in bringing the charges. *See Thomas v. City of Troy*, 293 F. Supp. 3d 282, 294 (N.D.N.Y. 2018) (Suddaby, C.J.) (stating that a claim for malicious prosecution requires showing not only that a criminal proceeding was initiated against the plaintiff, that such proceeding was terminated in the plaintiff's favor, and that there was a lack of

probable cause for commencing the proceedings, but also that actual malice was the motivation of the defendant's actions).   To prove actual malice under New York law, "the plaintiff must show that the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served,'" or that "probable cause to initiate a criminal proceeding [was] so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted."   *Sanders v. City of Saratoga Springs*, -- F. Supp. --, 22-CV-1154, 2023 WL 5563386, at *7 (N.D.N.Y. Aug. 29, 2023) (Sannes, C.J.).

Plaintiff's statements that "[i]t is clear to me that Defendant Altieri was motivated by his friendship to Robert O'Keefe" and related assertions in his affidavit are insufficient to create a genuine dispute of fact regarding malice.   (Dkt. No. 108, at ¶ 23.)   Plaintiff's belief is not based on any apparent evidence; neither are his assertions that Defendant Altieri lied or manufactured evidence to support the Information.   Moreover, Plaintiff's citation to statements Defendant Altieri made in the car on the day of Plaintiff's arrest to the effect that Defendant Altieri "disliked my using the law to harm innocent employers such as Robert O'Keefe as his motivation for my arrest" (and similarly in his Complaint, that Defendant Altieri stated that he was aware of Plaintiff's previous lawsuits and "made clear his dislike for those who misuse and abuse the law") are also insufficient to raise a dispute of fact regarding the element of malice. (Dkt. No. 1, at ¶ 72; Dkt. No. 108, at ¶ 23.)   Disliking a misuse or abuse of the law does not in any way suggest that Defendant Altieri commenced the arrest and prosecution of Plaintiff for a malicious motive, especially given that it is clear from the evidence provided (particularly the statements from Robert O'Keefe) that Defendant Altieri believed that Plaintiff was threatening to commence litigation against companies or individuals that had not violated the law Plaintiff cited

24

as the basis for such threatened legal action.   In context, no reasonable factfinder could interpret Defendant Altieri's purported statements as an indication of an improper motive such as punishing Plaintiff for asserting his rights because Defendant Altieri had a reasonable basis for believing Plaintiff was attempting to extort Robert O'Keefe related to a job advertisement Mr. O'Keefe had not actually posted.   Further, even if the Court were to find that there was a genuine dispute regarding whether probable cause existed, the evidence discussed above shows that it was not "so totally lacking" as to permit an inference of malice.

Lastly, even if Defendant Altieri's knowledge of the other lawsuits would be insufficient to sustain the burden of establishing actual probable cause, Defendant Altieri would be entitled to qualified immunity because the same evidence shows the existence of at least arguable probable cause at the time of Plaintiff's arrest and prosecution.   "Even in the absence of probable cause, a police officer is entitled to qualified immunity where '(1) [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for [him] to believe that [his] actions were lawful at the time of the challenged act.'"   *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 [2d Cir. 2007]).   "'Arguable' probable cause" therefore exists when an officer's probable cause determination was objectively reasonable.   *Betts*, 751 F.3d at 83.   Here, for the reasons discussed above, it was objectively reasonable for Defendant Altieri to believe that the information received from Robert O'Keefe and from his investigation and internet search regarding Plaintiff's past lawsuits met the requirements of N.Y. Pen. L. § 190.60(1) at the time such charge was brought against Plaintiff.

For all of the above reasons, the Court grants summary judgment to Defendant Altieri on

Plaintiff's claims of false arrest, retaliation, and malicious prosecution.

**B.    Whether Either Party Is Entitled to Summary Judgment on Plaintiff's Claim of Excessive Force Against Defendant Potts**

After careful consideration, the Court answers this question in the affirmative and grants summary judgment to Defendant Potts for the reasons stated in Defendants' memoranda of law. *See, supra* Parts I.D.2 and 4.   To those reasons, the Court adds the following analysis.

"Because 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,' determining whether the amount of force an officer used is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"   *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 396 [1989]).   "The proper application of the reasonableness standard, according to the *Graham* court, 'requires careful attention to the facts and circumstances of each particular case, including' (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Cugini*, 941 F.3d at 612 (quoting *Graham*, 490 U.S. at 397).   Such assessment must be made "in light of the facts and circumstances confronting" the officers "without regard to their underlying intent or motivation" or "the 20/20 vision of hindsight."   *Graham*, 490 U.S. at 396-97.

In cases involving alleged excessive force based on the application of handcuffs, the relevant question is, broadly, "whether an officer reasonably should have known during handcuffing that his use of force was excessive."   *Cugini*, 941 F.3d at 613.   This does not always require a plaintiff to establish that he or she "alerted the officer to the fact that [the]

handcuffs were too tight or causing pain," but rather if it is shown that "either the unreasonableness of the force used was plainly apparent under the circumstances, or the plaintiff signaled [his or] her distress, verbally or otherwise, such that a reasonable officer would have been aware of [his or] her pain, or both."   *Cugini*, 941 F.3d at 613 (citing *Stainback v. Dixon*, 569 F.3d 767, 772 [2d Cir. 2009]; *Cortez v. McCauley*, 478 F.3d 1108, 1129 [10th Cir. 2007]; *Liiv v. City of Coeur D'Alene*, 130 F. App'x 848, 852 [9th Cir. 2005]).   This reasonableness is assessed "from the perspective of a reasonable officer on the scene."   *Cugini*, 941 F.3d at 613 (quoting *Graham*, 490 U.S. at 396).

Here, the charges involved here are fairly minor, there is no evidence to suggest that Plaintiff posed a safety threat to Defendant Potts or anyone else at the time of his arrest, and there is no indication that he attempted to resist arrest or flee from Defendant Potts.   As a result, the degree of any use of force that would be objectively reasonable in the situation is admittedly minor.   However, absence of a threat to safety and lack of attempt to flee do not inherently preclude an officer from using handcuffs to restrain an individual in the process of effectuating an arrest.

Plaintiff bases his excessive force claim on his own assessment that the handcuffs were placed too tightly in a manner that caused his wrists to be sore for "a week's time after I returned home from the arrest on February 29, 2020," and on pictures following his arrest that show some skin indentations and redness on his wrists.   (Dkt. No. 108, Attach. 3, at 16; Dkt. No. 108, Attach. 4, at 55-58.)   At his deposition, Plaintiff testified that the handcuffs were "very tight" and that he was "very uncomfortable," but he admitted that he did not mention his discomfort to Defendant Potts at any time.   (Dkt. No. 110, Attach. 1, at 126.)   He testified that his wrists "hurt

for about two weeks" following his arrest, but he did not seek any medical attention or take any medications for that pain.   (Dkt. No. 110, Attach. 1, at 127-28.)   When asked what kind of pain he experienced, he responded, "Just, I have psoriatic arthritis, so it aggravated right over here, it aggravated the psoriatic arthritis that I had," and that it was an "achiness . . . in the joints, which I commonly have, and for it being restrained for a period of time."   (Dkt. No. 110, Attach. 1, at 127.)

Plaintiff's own testimony undermines his claim that the force used to handcuff him was objectively unreasonable.   There is no dispute that he never expressed his discomfort to Defendant Potts or any other relevant officer or gave Defendant Potts any apparent reason to believe he was in pain.   Plaintiff also admits that the pain he experienced was something that he commonly experienced as a result of a medical condition, and that the application of the handcuffs merely caused that existing condition to become aggravated for a week or two after the arrest.   Although the presence of such a condition might have merited Defendant Potts taking a different course of action regarding handcuffing Plaintiff, again, it is undisputed that Plaintiff did not express any discomfort to Defendant Potts, either verbally or apparently with his body language, that would have reasonably caused Defendant Potts to be aware of his discomfort, nor is there any evidence that Plaintiff informed Defendant Potts that he had a medical condition or medical symptoms related to his wrists.   Nor do the available pictures document any kind of bruising or skin damage that would suggest that the handcuffs were so tight as to be excessive.   Given this evidence, no reasonable factfinder could conclude that the manner in which Defendant Potts handcuffed Plaintiff was excessive or objectively unreasonable in the circumstances presented.

28

For the above reasons, summary judgment is granted to Defendant Potts on Plaintiff's claim of excessive force under the Fourth Amendment.

### C.     Whether Either Party Is Entitled to Summary Judgment on Plaintiff's Claim for Failure to Intervene Against Defendant Altieri

After careful consideration, the Court answers this question in the affirmative and grants summary judgment to Defendant Altieri for the reasons stated in Defendants' memoranda of law. *See, supra* Parts I.D.2 and 4.   To those reasons, the Court adds the following analysis.

"'An officer who fails to intercede [in the infringement of an individual's constitutional rights by other officers] is liable for the preventable harm caused by the actions of the other officers where the officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official.'"   *Thomas*, 293 F. Supp. 3d at 296 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 [2d Cir. 1994]).   "To establish such a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene."   *Thomas*, 293 F. Supp. 3d at 296 (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 [2d Cir. 2001]; *Anderson*, 17 F.3d at 557; *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 [2d Cir. 1988]).

Plaintiff's failure-to-intervene claim fails for the same reason most of his other claims do: the existence of probable cause to arrest him.   Notably, Plaintiff asserts specifically that Defendant Altieri failed to stop Defendant Potts from arresting him, an action which he alleges

was a violation of his constitutional rights because there was no basis for the arrest.   Because the Court has already determined that Plaintiff's arrest does not constitute a constitutional violation due to the existence of sufficient probable cause, Plaintiff cannot sustain a claim based on a failure to stop such arrest.   *See Guillen v. City of New York*, 19-CV-11784, 2023 WL 2561574, at *10 (S.D.N.Y. Mar. 17, 2023) (noting that "when there is probable cause to arrest [the plaintiff], his claim for failure to intervene [to stop that arrest] necessarily fails") (quoting *Williams v. City of New York*, 409 F. Supp. 3d 137, 143 [E.D.N.Y. 2019]); *Williams v. City of New York*, 20-CV-5995, 2023 WL 2308529, at *4 (S.D.N.Y. Mar. 1, 2023) (granting summary judgment on failure-to-intervene claim because "Plaintiff has not established that he was being unjustifiably arrested [and therefore] there was no wrongful act in which to intervene").

For the above reasons, the Court grants summary judgment to Defendants on Plaintiff's failure-to-intervene claim against Defendant Altieri.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 108) is **DENIED**; and it is further

**ORDERED** that Defendants' cross-motion for summary judgment (Dkt. No. 110) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Fourth Amendment claims of malicious prosecution, First Amendment retaliation, and false arrest against Defendant Altieri, Fourth Amendment claim of excessive force against Defendant Potts, and Fourth Amendment claim for failure to intervene against Defendant Altieri are **DISMISSED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 15, 2024
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge